Good morning, Your Honors. Steve Schuman for the Bell Gardens Bicycle Casino. Thank you for the opportunity to be heard today. Let me get right to the heart of the matter. This is a de novo review of the granting of a summary judgment motion. So I need to tell you where there are either material issues of disputed facts or simply where there are undisputed facts, and I believe the district court erred in its policy interpretation, which would be a matter of law. On the forgery coverage, it appears to me that it's a disputed issue of fact whether the check or draft or whether the player's bank withdrawal receipt that the dishonest party in this case used to extract the money is either a check or a draft or, and here's the, I suppose the real factual inquiry, a similar direction to pay a sum certain. It's clearly a direction to pay a sum certain if it's sufficiently similar to a check or draft. But was it forged? Well, that, the forged document was the third-party check, which went into the, opened up the account, but the, was this withdrawal forged looked pretty genuine to me. That is one of the additional issues. There is a statute, I think, in something to the effect of making a felony out of obtaining money under false pretenses, but that's not covered by the insurance policy, is it? Well, there are several places to look to see what forgery actually means. One of those places is not the policy because they didn't define it in the policy. Now, that in itself doesn't make it an ambiguity. Forgery is in the dictionary. Yes, it is in the dictionary. And the dictionary says that forgery is the false making of a document that affects another's rights. That's one definition. And it seems clear. Well, that would cover an NSF check, wouldn't it? Which wouldn't be forgery, but it would be false representation that there was money in the bank. In this case, this falls into the category of making a genuine document or making a false document with a genuine signature with the intent of defrauding the party. Yes, the person knew, not only knew there was no money, but knew that he had put in and deposited a false check. That gets into the induced to part with clause, doesn't it? Well, I think you're getting to the theft coverage. Induced to part with property by a false representation. I'm sorry. Well, I was just trying to figure out how this document that this interesting character negotiated with the cash window there and got chips with it, why it was forged, it was a genuine document. I think, well, no, it's not. It had an evil purpose, but it was a genuine document. Well, but it's not a genuine document. It's not any more genuine than the cases that talk about getting loans on the basis of false invoices. The document, and I'm referring now to the Century Bank case and the Security Bank case, in Century Bank, the bank made a loan based on a true reinsurance document, but it had a signature of the actual person that signed, but he didn't have authority. And the court found there was forgery under forgery coverage. In the Security Bank case, the borrower signed over invoices, true in form, with his true signature, but the court found that they were forgeries because the transactions didn't really occur, and the use of those to induce the bank to loan money fell within the forgery coverage. So I think you have to really focus on the insured's reasonable expectations of coverage under the policy. There's an argument to be made that this falls within the penal code section of forgery, but we're not talking about a criminal case here. We're talking about what would invoke coverage and why this should be considered forgery under the insurance policy in light of the reasonable expectations of the insured. So in that context, and with those cases as a backdrop, I think the player's bank withdrawal receipt was forged. That probably I'll concede is a legal issue to be addressed, but the other issues under the forgery coverage are simply whether the chips fall within the definition of currency, so as to be Again, we've got an argument. I think the facts are essentially undisputed on how you can use these chips, that they're redeemable, that they can be used as a medium of exchange within the bicycle casino or any other casino in Southern California, that they are not exclusive, that you can use cash or you So in all those senses, they're not like tokens, and therefore they qualify as money. So what we have under the forgery coverage is a direction to pay of some certain in money defined as currency that is falsified with the intent to defraud. Now under the theft coverage, there's also what I believe is a huge factual issue, and that is what was the act that induced the bicycle casino to part with the property, with this money? This is an exclusion. Everyone admits there was a theft here, which means everyone admits there was a dishonest act already. The insurer, Great American, has the burden of bringing this case within the exclusion. And bicycle casino has submitted, I think, powerful evidence that the act inducing it to part with this money was the honest but mistaken act of Bank of America in confirming that the check had There was a hold placed on this check. The bicycle casino was not going to fund it without that honest but mistaken representation from the Bank of America. Well, if the dishonest act weren't what induced or caused the loss, then I don't understand how bicycle is entitled to any benefits at all under the theft coverage. An exclusion carves something out of coverage. You start, in this policy, you start with the premise that a theft occurred, therefore there was a dishonest act. Sure. Okay. But if his dishonest act didn't cause it, then where's there a dishonest act? There was nothing dishonest about the bank. That was just a negligent goof-up. Well, but his dishonest act did cause it. Well, it's the same as if a thief comes in, I mean, if you're induced to leave your property available by some honest representation about how safe it's going to be, and a thief comes in and steals it, you're induced to part with the property by something other than the theft. But the theft occurs, I mean, there's no argument that the money was stolen, but it wouldn't have been stolen if you weren't induced to give it up by something way over here from a third party. If you look at the exclusion, there are two requirements that have to be met. One is voluntary parting, and the other is it has to be induced by a dishonest act. Now, there's no reason, since theft is already dishonest, there was no reason for the exclusion to repeat the need for a dishonest act unless the exclusion and the policy intent acknowledges the possibility that there can be a voluntary parting, which is a theft, but which occurs by an honest act or by a dishonest act. Otherwise, the exclusion would have just said, we don't cover voluntary parting with the property. So, you know, unless you give no additional meaning to that clause in the exclusion requiring a dishonest act, you have to allow for the possibility that voluntary parting can be by an honest act. And this case falls within that relatively rare niche, but I think we've cited a number of possible examples of types of dishonest act. For example, you give your credit card in a restaurant to pay for something, and while it's there, someone steals the number and steals your money. Well, there's a theft, but it's been induced by the simple representation. You need to pay for your meal, and you give up your credit card. Those kinds of examples show this niche where this clause falls. Now, on the other issues, fraud of the agent, there are material facts in dispute relating to great Americans' knowledge of the to induce purchase of this policy. Despite the disclaimer? Yes, despite the disclaimer. Because? The disclaimer, well, because the policy, you don't get the policy until after you've bought it. So this is a matter of distinguishing between misrepresentation inducing the acquisition of the policy and the contract. I can see if the insured has to read the contract, and what the contract says on a breach of contract case is going to govern. But in terms of acquiring the policy, if representations are made as to what's going to be in that policy, you don't have a license to misrepresent what's going to be in the policy by simply saying, read the policy when you get it, because then it's too late. You've already relied on what you're told in advance is in that policy. And this misrepresentation said any check would be covered by the forgery coverage. And as far as reliance, justifiable reliance, that likewise is a factual issue. The even great Americans' cases say that one should be able to rely on the representation of an agent. And the mere fact that the bicycle casino had someone who had previously done defense work for a couple of years, not insurance coverage work, doesn't vitiate that justifiable reliance. All right. I think I've hit the high issues. I'll save a few minutes for rebuttal. Sure. Mr. Lytton. Good morning, Your Honors, and may it please the Court. My name is Jason Lytton. I represent Great American Insurance. I'll start with a question that Judge Goodwin asked on the issue of forgery. But actually, I'll back up a second and talk about what the reasonable expectation of the insured would be in this case. That would be if somebody took one of the casino's checks and forged it and the casino suffered a loss because people were able to get money out of its account through that, that would be a loss that would be covered by this policy. That's clear. And it's clear that this check is not covered because it wasn't drawn, the third-party check was not drawn on the casino's account. What this case is really about is an attempt at a clever argument to get around that basic fact and to call a withdrawal receipt, which is completely and entirely genuine in form and content, call it a forgery purely based on an evil purpose, and that's not what forgery is. And even if you look at what the evil purpose here was, I mean, if you think about it, the casino told the customer here that the check had cleared, and that's how he got the money. What caused them to give him the money was the fact that the bank told them that there was money in his account that the casino believed was there. These withdrawal receipts couldn't have induced the casino to turn the money over because the money was in the account. The fact is what induced them to turn the money over was the fact that they deposited the money in his account. It was the customer's account, it wasn't the casino's account. There's no case law or statute or any provision of law that says that a pure evil purpose without an actual false document is a forgery. And I think if we give one example in the context of a casino that we could see that would come up if this were to be found in this case, we could think about the fact that many casino customers have lines of credit. Based on the casino's argument, if somebody comes into a casino, signs a promise to pay $5,000, whatever, $10,000, the casino comes back and says, well, they didn't pay it, they subjectively didn't intend to pay it when they signed that, that's a forgery. That can't be what this is about. As to the theft, I think Judge Reimer made exactly the right point, which is you can't have it both ways here. If the loss here had to have been caused by a theft in order to be covered by this policy. The fact that it may have also been caused by something else is really beside the point. If an exclusion, under California law, if an exclusion excludes a loss covered by the policy, the fact that some other cause may have contributed to that does not initiate the exclusion. Mr. Schuman cited in this reply brief, Insurance Code Section 530, which talks about cases where you have two causes, one of which is covered by the policy and one of which is not covered by the policy. In that case, you have to get into an issue about which is the real cause, which is the proximate cause of the injury. In that case, there could be a coverage, even though there's an exclusion, that excludes a but-for cause. But that's not the case here. Neither one of these causes is covered by the policy. The theft is not covered because it was a voluntary party. The negligent act of the bank is not covered because this isn't a negligence policy. It's a theft policy. I don't know where you are in your schedule of your points, but could you help me out on this summary misrepresentation? Was that made by the broker who produced the insurance, or was the broker a party in this case? No, I don't remember whether. I know the bank was a party at one point. I don't think the agent was a party. What is your answer to the point that the appellant makes that the summary arrives and you rely on whatever's in that summary, even though it says in big capital letters, probably in red letters, you can't rely on this summary, you have to read the policy, but they don't have the policy yet. Theoretically, the policy's still going to be delivered, and they'll look at it after they decide to buy it. So what's wrong with the appellant's argument that that disclaimer is not effective because it's an impossible it requires you to do an impossible act, to read the policy before you get it? I think my answer to that would be that we're not talking about a case of rescission of the policy here. I mean, it's one thing to say that if the case has an obligation to read the policy when it receives it, and if it received the policy and said, oh, this is not the coverage we bargained for and it wanted to get out of the policy, that's one thing. To say that you get coverage for something that's not covered by the policy based on a summary that just gives a one-sentence summary of a policy provision can't produce coverage that's going to give an $800,000 loss in this case. This is a renewal policy? I don't remember anything in the record about that. I think there was something, a reference to it somewhere in one of the briefs. And the other point would be there's no evidence that in order for the casino to have been induced to buy this policy, buy this provision they would have to demonstrate that they could have purchased this type of coverage elsewhere. And there's no evidence that they could have, that they have done it now, that any such coverage exists that would give them coverage for forgeries of third-party checks that are produced in the casino. I think the other point is that they didn't plead a case of negligent misrepresentation in this case. They pled only fraud. He's argued only fraud in his briefs. And there's absolutely, what is clear in the record is there's absolutely no evidence of an attempted fraud. What we have is the evidence from the agent that we have the evidence from the agent who says that the agent gave a declaration saying that he believed, or she, I don't care whether it was a man or a woman, but believed that this coverage was provided as based on the summary. And you have the testimony of the person from Red American who said he'd never seen the summary. It was done by the agent. There's absolutely no attempted fraud. All the cases that were cited by the casino in their briefs, in their reply brief and that have been discussed in any case that I've ever found under California law, they're not fraud cases. These are negligence cases. And usually the lawsuit is against the agent and then the insurance company is essentially vicariously liable for their negligent conduct. But nothing saying that it's fraud for an agent to accidentally misrepresent coverage. And that's what they're arguing here. I think that covers all the points. Unless there are any more questions on the voluntary parting issue, because Mr. Shuman went on about the issue of whether this was induced by a dishonest back and some of those hypotheticals. To me, this issue is crystal clear. I don't think there's much to go into it, but if the Court has any questions about it. I don't think we do. Okay. Great. Thank you. Mr. Shuman? One more point on forgery. Again, in the context of the insurance policy, the record shows that Great American's claims representative, Mr. Marston, actually procured industry literature that established that there are policy forms which define forgery to require a false signature on a document. This policy form didn't. And that evidence is, I believe, an intent to provide broader coverage so that you're not going to require the insured to adhere to a narrow definition of forgery. Are you now speaking of the withdrawal slip that is used to get the chips out of the window? Yes. In the forgery coverage. That's it on that point. I heard Mr. Marston say that the withdrawal receipt is not what induced the casino to part with the money. And with that statement, I'm in agreement. Under the theft coverage, what induced the casino to part with the money was the honest but mistaken information from Bank of America. That's just not how the theft was effectuated. That's the distinction to be drawn, and that's why the exclusion allows for the possibility that this voluntary parting can be either through the dishonest act of the perpetrator or through an honest act, in this case, and most cases, I would think, of some third party. At worst, we're dealing with a concurrent cause situation, and then you have to get into the efficient proximate cause cases. And I would argue that what set the wheels in motion for this loss was the Bank of America telling the bicycle casino the check had cleared, causing the bicycle casino to lift the hold that was protecting it from suffering this loss. Responding to your question, Your Honor, the broker, well, the person, entity making the representation, this is on the misrepresentation claim, was actually an appointed agent of Great American. So the representation of that agent is the representation of Great American. And in what evidence is there that Gallagher intended to defraud? Well, the argument that Great American has advanced is there's no evidence of intent to induce reliance. The evidence is right in the circumstances, Your Honor. I don't see if you're proffering, you're trying to sell an insurance policy and you're proffering a summary of its terms to the prospective buyer, then you're intending to sell the policy. Yeah, but I mean, knowing that it was false? The company knew it was false. That's what is important. We're not suing the individual at Gallagher. We're suing somebody. Somebody has, I mean, there has to be some linkage. And so I'm just looking for evidence that shows that Gallagher somehow made this representation knowing that it was false in order to get them to buy the policy. And what I'm suggesting is that that's not a necessary prerequisite. As you phrased it, what's necessary is that Great American know that the facts in this representation were false. Because it is legally Great American's representation to the bicycle casino. Okay. Is there any, I mean, so you're just saying the simple fact that Gallagher was their appointed agent means that anything that Gallagher did they necessarily knew about. And because it's their coverage, they necessarily knew that the summary wasn't correct? I think in law they're charged with that knowledge. I mean, your answer to my question is yes, I take it. Yes, but as a matter of law. Yeah, that's what I mean. You don't have to have any further, any evidence to show that anybody Great American knew that this brochure was out there. Or that anybody Gallagher knew that it was wrong. There's nothing in the record that I can point you to because we never got to the stage. But you're saying it's not necessary, right? I don't believe it's legally necessary as long as Gallagher is appointed as an agent in insurance and admitted to be a legal agent. I believe Mr. Marston acknowledged that. Thank you. All right. Thank you for the argument. The matter just argued will be submitted and the Court will stand in recess for the day. Go ahead. Thank you. Thank you.
judges: Goodwin, Magill, Rymer